# EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS") (collectively, the "United States"), the State of Texas, acting through the Texas Attorney General's Office ("Texas"), Mohammad Athari, M.D. ("Dr. Athari"), Mohammad Athari, M.D., P.A., United Neurology, P.A., ("United Neurology"), Universal MRI & Diagnostics, Inc. d/b/a Universal MRI Baytown ("Universal Baytown"), Universal MRI & Diagnostics, Inc. d/b/a Universal MRI Humble ("Universal Humble"), Universal MRI & Diagnostics, Inc. d/b/a Universal MRI Conroe, ("Universal Conroe"), (collectively, "Defendants"), and Lisa Parker and Maribeth Holderith ("Relators") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A. Dr. Athari is a physician practicing in Houston, Texas, and the surrounding areas. Dr. Athari is a neurologist enrolled as a Medicare and Medicaid provider. Dr. Athari is the owner of Mohammad Athari, M.D., P.A., United Neurology, Universal Baytown, Universal Humble, and Universal Conroe.

B. Mohammad Athari, M.D., P.A. is a professional association with its principal address in Baytown, Texas, and is enrolled as Medicare and Medicaid provider.

C. United Neurology is a professional association with its principal address in Houston, Texas, and is enrolled as a Medicare and Medicaid provider.

D. Universal Baytown is a Texas corporation with its principal address in Baytown, Texas, and is enrolled as a Medicare and Medicaid provider.

E.  Universal Humble is a Texas corporation with its principal address in Humble, Texas, and is enrolled as a Medicare and Medicaid provider.

F.  Universal Conroe is a Texas corporation with its principal address in Conroe, Texas, and is enrolled as a Medicare and Medicaid provider.

G.  Defendants provide neurology and diagnostic services to Texas citizens within their service area. Defendants have billed for and received reimbursements from Medicare and Medicaid for these services.

H.  On June 11, 2020, Relators filed a *qui tam* action in the United States District Court for the Southern District of Texas captioned *United States and Texas ex rel. Parker v. Mohammad Athari, M.D., et al.*, 4:20-cv-02056, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) *et seq*. ("FCA") and the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code §§ 36.001, *et seq.* ("TMFPA") (the "Civil Action"). The Civil Action alleges that Dr. Athari self-refers neurology patients from his clinical practice to the Defendant imaging centers for diagnostic procedures in violation of the Physician Self-Referral Law, 42 U.S.C. § 1395nn (commonly referred to as the Stark Law). Relators also allege that Dr. Athari, Mohammad Athari, M.D., P.A., and United Neurology are performing medically unnecessary procedures in violation of the FCA and TFMPA. The United States filed its Notice of Intervention for the Purpose of Settlement on November 16, 2023.

I.  The United States contends Defendants submitted or caused to be submitted false claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll ("Medicare"). Texas contends Defendants submitted or caused to be submitted false claims for payment to the State's Medicaid Program (42 U.S.C. Chapter 7 Subchapter XIX), including "managed care entities' as defined by 42 U.S.C. § 1369u-2.

2

J.   The United States contends that between July 22, 2014, and July 10, 2017, Dr. Athari,

Mohammad Athari, M.D., P.A., and United Neurology, knowingly submitted false claims

to Medicare Part B for medically unnecessary services in violation of the FCA. The

United States further contends that between January 7, 2014, and January 8, 2021,

Defendants knowingly submitted false claims to Medicare that violated the Stark Law.

a.   Specifically, the United States alleges that from July 22, 2014, through July 10,

2017, Dr. Athari, Mohammad Athari, M.D., P.A., and United Neurology engaged

in a pattern and practice of billing Medicare Part B for services that were not

reasonable or medically necessary because those services were  not supported by

the patients' diagnoses or medical records, and for services that were rendered by

unlicensed and untrained technicians, and, therefore, rendered incorrectly or

inadequately.  The United States alleges that Dr. Athari, Mohammad Athari,

M.D., P.A., and United Neurology knowingly submitted or caused to be

submitted these claims to Medicare Part B for payment, and as a result of the

foregoing conduct, the United States alleges Dr. Athari, Mohammad Athari,

M.D., P.A., and United Neurology violated the FCA.

b.   The United States also alleges that from January 7, 2014, through January 8,

2021, Dr. Athari submitted or caused the submission of false claims to Medicare

by billing for diagnostic imaging procedures in violation of the Stark Law.

Specifically, Dr. Athari personally, through Mohammad Athari, M.D., or through

United Neurology, referred his neurology patients to diagnostic centers he owns

(Universal Baytown, Universal Humble, and Universal Conroe) in violation of the

Stark Law. The United States alleges this conduct did not satisfy the requirements

of any applicable exception to the Stark Law. The United States further alleges

3

that, on the basis of these violations of the Stark Law, Defendants violated the
FCA.

    c.    This conduct is referred to hereinafter as the "United States Covered Conduct."

K. Texas contends that from July 22, 2014, through July 10, 2017, Dr. Athari, Mohammad
Athari, M.D., P.A., and United Neurology engaged in a pattern and practice of billing
Texas Medicaid for services that were not reasonable or medically necessary because
those services were not supported by the patients' diagnoses or medical records, and for
services that were rendered by untrained and unlicensed technicians, and, therefore,
rendered incorrectly or inadequately. Texas alleges that Dr. Athari, Mohammad Athari,
M.D., P.A., and United Neurology knowingly submitted or caused to be submitted these
claims to Medicaid for payment, and committed unlawful acts in violation of the Texas
Human Resources Code CHAPTER 36, Texas Health Care Program Fraud Prevention
Act, as a result of the foregoing conduct. This conduct is referred to hereinafter as the
"Texas Covered Conduct." The United States Covered Conduct and the Texas Covered
Conduct are hereinafter referred to as the "Covered Conduct."

L. This Settlement Agreement is neither an admission of liability by Defendants nor a
concession by the United States and the State of Texas that their claims are not well
founded.

M. Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this
Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

    To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the
above claims, and in consideration of the mutual promises and obligations of this Settlement
Agreement, the Parties agree and covenant as follows:

4

<u>TERMS AND CONDITIONS</u>

1. Defendants shall pay to the United States and Texas, collectively, the sum of $1,800,000.00 ("Settlement Amount"), of which $1,182,304.70 is restitution, no later than thirty (30) days after the Effective Date of this Agreement. Payment shall be made by electronic funds transfer pursuant to written instructions provided by the United States Attorney's Office for the Southern District of Texas.

2. The total portion of the Settlement Amount for the Texas Covered Conduct is $14,903.09 of which $10,310.70 is restitution. The Texas portion of this allocation is $7,859.89 (the Texas Amount). The Texas Amount represents the state share of the Medicaid portion of the Settlement Amount. Conditioned upon the United States receiving the Settlement Amount payments from Dr. Athari and as soon as feasible after receipt, the United States shall pay $6,445.11 to Texas by electronic funds transfer (the State Payment), which represents Texas' state share of the Texas Medicaid portion of the Settlement Amount after Relator's Share is paid as described in Paragraph 6.

3. Defendants may pre-pay the Settlement Amount at any time.

4. In the event Defendants fail to pay any amount as provided in Paragraph 1 within 30 days of the date on which such payment is due, Defendants shall be in default of their payment obligations ("Default"). In the event of such Default, Defendants agree that the United States, at its sole discretion, may within 60 days of the Default (i) retain any payments previously made, rescind this Agreement by written notice to Dr. Athari and may pursue the Civil Action or bring any civil and/or administrative claim, action, or proceeding against Defendants for the claims that would otherwise be covered by the releases provided in Paragraph 10 below, with any recovery reduced by the amount of any payments previously made by Defendants to the United States under this Agreement; (ii)

take any action to enforce this Agreement in a new action or by reinstating the Civil Action; (iii) offset the remaining unpaid balance from any amounts due and owing to Defendants by any department, agency, or agent of the United States at the time of Default or subsequently; and/or (iv) exercise any other right granted by law, or under the terms of this Agreement, or recognizable at common law or in equity.  The United States shall be entitled to any other rights granted by law or in equity by reason of Default, including referral of this matter for private collection.  In the event the United States pursues a collection action, Defendants agree immediately to pay the United States the greater of (i) a ten percent (10%) surcharge of the amount collected, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an action.  In the event that the United States opts to rescind this Agreement pursuant to this Paragraph, Defendants waive and agree not to plead, argue, or otherwise raise any defenses of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that are (i) filed by the United States against Defendants within 60 days of written notification that this Agreement has been rescinded, and (ii) relate to the Covered Conduct. Defendants agree not to contest any offset, recoupment, and/or collection action undertaken by the United States pursuant to this paragraph, either administratively or in any state or federal court, except on the grounds of actual payment to the United States.

5. In the event of Default, OIG-HHS may exclude any or all Defendants from participating in all Federal health care programs until Dr. Athari pays the Settlement Amount as set forth in Paragraph 1. OIG-HHS will provide written notice of any such exclusion to Defendants. Defendants waive any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7); and agree not to contest such exclusion either administratively or in any

state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion, Defendants wish to apply for reinstatement, Defendants must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Defendants will not be reinstated unless and until OIG-HHS approves such request for reinstatement.

6.  Conditioned upon the United States receiving the Settlement Amount payment as described in Paragraph 1 and as soon as feasible after receipt, the United States agrees that Relators shall be awarded $324,000.00 from the Settlement Amount.

7.  Subject to the exceptions in Paragraph 10 (concerning reserved claims) below, and upon the United States' receipt of the Settlement Amount, the United States releases Defendants from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

8.  Subject to the exceptions in Paragraph 10 (concerning reserved claims) below, and upon Texas's receipt of the Texas Amount, Texas releases Defendants from any civil or administrative monetary claim Texas has for the Texas Covered Conduct under the Texas Health Care Program Fraud Prevention Act, Tex. Hum. Res. Code § 36.011 *et seq.*

9.  Subject to the exceptions in Paragraph 10 below, and upon the United States' receipt of the Settlement Amount, Relators, for themselves and their heirs, successors, attorneys, agents, and assigns, releases Defendants from any civil monetary claim the Relators have on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

10. Notwithstanding the releases given in Paragraphs 7 and 8 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States and Texas are specifically reserved and are not released:

   a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code) or any Texas tax or revenue law;

   b. Any criminal liability;

   c. Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory or permissive exclusion from Federal health care programs or the Texas Medicaid Program;

   d. Any liability to the United States; or Texas (or their agencies) for any conduct other than the Covered Conduct;

   e. Any liability based upon obligations created by this Agreement;

   f. Any liability of individuals;

   g. Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

   h. Any liability for failure to deliver goods or services due;

   i. Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct; and

   j. Any liability for (i) claims involving unlawful or illegal conduct based on State or federal antitrust violations; and (ii) claims involving unfair and/or deceptive acts and practices or violations of Texas' consumer protection laws.

11. Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).  Conditioned upon

8

Relators' receipt of the Relators' Share, Relators and their heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

12. Relators, for themselves, and for their heirs, successors, attorneys, agents, and assigns, releases Defendants, and their officers, agents, and employees, from any liability to Relators arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) for expenses or attorneys' fees and costs.

13. Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

14. Defendants fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the United States Covered Conduct or the United States' investigation or prosecution thereof.

15. Defendants fully and finally release Texas, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may

assert in the future against Texas, its agencies, officers, agents, employees, and servants, related to the Texas Covered Conduct or Texas' investigation or prosecution thereof.

16. Defendants fully and finally release the Relators from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the Relators, related to the Covered Conduct, all allegations in the *qui tam* complaint, and the Relators' investigation and prosecution thereof.

17. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary) or any state payer, related to the Covered Conduct; and Defendants agree not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals related to the Covered Conduct.

18. Defendants agrees to the following:

    a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendants, their present or former officers, directors, employees, shareholders, and agents in connection with:

        i. the matters covered by this Agreement;

        ii. the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

    iii. Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

    iv. the negotiation and performance of this Agreement; and

    v. the payment Defendants make to the United States pursuant to this Agreement and any payments that Defendants may make to Relators, including costs and attorneys' fees

        1. are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as "Unallowable Costs").

b. <u>Future Treatment of Unallowable Costs</u>:  Unallowable Costs shall be separately determined and accounted for by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Defendants or any of their subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Defendants further agree that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this paragraph) included in payments previously sought from

the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Defendants or any of their subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

d. Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies.  The United States reserves its rights to disagree with any calculations submitted by Defendants or any of their subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on Defendants or any of their subsidiaries or affiliates' cost reports, cost statements, or information reports.

e. Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Defendants' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

19. Defendants agree to cooperate fully and truthfully with the United States' and Texas' investigation of individuals and entities not released in this Agreement.  Upon reasonable notice, Defendants shall encourage, and agree not to impair, the cooperation of their

12

directors, officers, and employees, and shall use their best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Defendants further agree to furnish to the United States and Texas, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that they have undertaken, or that has been performed by another on their behalf.

20. This Agreement is intended to be for the benefit of the Parties only.  The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 21 (waiver for beneficiaries paragraph), below.

21. Defendants agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third-party payors based upon the claims defined as Covered Conduct.

22. Upon receipt of the payment described in Paragraph 1 above, the United States, Texas, and the Relators shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action as follows:

    a.   The stipulation of dismissal shall be subject to the terms and conditions of this Agreement.

    b.   The stipulation of dismissal shall be with prejudice to the United States as to the United States Covered Conduct, with prejudice to Texas as to the Texas Covered Conduct, and without prejudice to the United States and Texas as to all other

13

claims.  The dismissal shall be with prejudice to the Relators as to all claims against Defendants.

23. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

24. Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

25. This Agreement is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Southern District of Texas.  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

26. This Agreement constitutes the complete agreement between the Parties.  This Agreement may not be amended except by written consent of the Parties.

27. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

28. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

29. This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.

30. This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

31. All Parties consent to the United States' and Texas' disclosure of this Agreement, and information about this Agreement, to the public.

32. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles and electronic transmissions

14

of signatures shall constitute acceptable, binding signatures for purposes of this

Agreement.

**[signatures begin on the following page]**

## THE UNITED STATES OF AMERICA

DATED: _____ BY: **MELISSA GREEN**  Digitally signed by MELISSA GREEN
Date: 2024.02.13 08:44:50 -06'00'

Melissa M. Green
Assistant United States Attorney
Southern District of Texas

DATED: _____ BY: **SUSAN GILLIN**  Digitally signed by SUSAN GILLIN
Date: 2024.02.09 17:31:10 -05'00'

Susan E. Gillin
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

## THE STATE OF TEXAS

DATED: _____ BY: _____

Elizabeth J. Brown Fore
Chief, Civil Medicaid Fraud Division
Office of the Texas Attorney General

DATED: _____ BY: _____

Karen Ray
Chief Counsel
Texas Health & Human Services Commission

## MOHAMMAD ATHARI, M.D. – DEFENDANT

DATED: 2-08-24 BY: X_____

Mohammad Athari, M.D.

DATED: _____ BY: _____

Ali Fazel
Counsel for Defendants

**[signatures continue on the following page]**

16

## THE UNITED STATES OF AMERICA

DATED: _____     BY: _____
                         Melissa M. Green
                         Assistant United States Attorney
                         Southern District of Texas


DATED: _____     BY: _____
                         Susan E. Gillin
                         Assistant Inspector General for Legal Affairs
                         Office of Counsel to the Inspector General
                         Office of Inspector General
                         United States Department of Health and Human Services


## THE STATE OF TEXAS

DATED: _____     BY: _____
                         Elizabeth J. Brown Fore
                         Chief, Civil Medicaid Fraud Division
                         Office of the Texas Attorney General


DATED: _____     BY: _____
                         Karen Ray
                         Chief Counsel
                         Texas Health & Human Services Commission


## MOHAMMAD ATHARI, M.D. – DEFENDANT

DATED: 2-08-24    BY: X_____
                         Mohammad Athari, M.D.


DATED: _____     BY: _____
                         Ali Fazel
                         Counsel for Defendants


**[signatures continue on the following page]**

16

## THE UNITED STATES OF AMERICA

DATED: _____    BY: _____

Melissa M. Green
Assistant United States Attorney
Southern District of Texas


DATED: _____    BY: _____

Susan E. Gillin
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services


## THE STATE OF TEXAS

DATED: 02/12/2024    BY: *Elizabeth J. B. Fore*

Elizabeth J. Brown Fore
Chief, Civil Medicaid Fraud Division
Office of the Texas Attorney General


DATED: _____    BY: **Karen Ray** Digitally signed by Karen Ray
Date: 2024.02.08
13:24:05 -06'00'

Karen Ray
Chief Counsel
Texas Health & Human Services Commission


## MOHAMMAD ATHARI, M.D. – DEFENDANT

DATED: _____    BY: _____

Mohammad Athari, M.D.


DATED: _____    BY: _____

Ali Fazel
Counsel for Defendants


**[signatures continue on the following page]**

16

## MOHAMMAD ATHARI, M.D., P.A. – DEFENDANT

DATED: 2-8-2024          BY: X _____
                         Mohammad Athari, M.D.
                         On behalf of Mohammad Athari, M.D., P.A.


DATED: _____        BY: _____
                         Ali Fazel
                         Fazel Law
                         Counsel for Defendants


## UNITED NEUROLOGY, P.A. – DEFENDANT

DATED: 2-8-2024          BY: X _____
                         Mohammad Athari, M.D.
                         On behalf of United Neurology, P.A.


DATED: _____        BY: _____
                         Ali Fazel
                         Fazel Law
                         Counsel for Mohammad Athari, M.D.


## UNIVERSAL MRI BAYTOWN – DEFENDANT

DATED: 2-8-2024          BY: X _____
                         Mohammad Athari, M.D.
                         On behalf of Universal MRI & Diagnostics, Inc. d/b/a
                         Universal MRI Baytown


DATED: _____        BY: _____
                         Ali Fazel
                         Fazel Law
                         Counsel for Defendants


**[signatures continue on the following page]**

17

## UNIVERSAL MRI HUMBLE – DEFENDANT

DATED: 2-8-2024          BY: X _____
Mohammad Athari, M.D.
On behalf of Universal MRI & Diagnostics, Inc. d/b/a
Universal MRI Humble

DATED: _____          BY: _____
Ali Fazel
Fazel Law
Counsel for Defendants

## UNIVERSAL MRI CONROE – DEFENDANT

DATED: 2-8-2024          BY: X _____
Mohammad Athari, M.D.
On behalf of Universal MRI & Diagnostics, Inc. d/b/a
Universal MRI Conroe

DATED: _____          BY: _____
Ali Fazel
Fazel Law
Counsel for Defendants

## LISA PARKER AND MARIBETH HOLDERITH - RELATORS

DATED: _____          BY: _____
Lisa Parker

DATED: _____          BY: _____
Maribeth Holderith

DATED: _____          BY: _____
Collin Cobb
Attorney at Law
Counsel for Relators

18

**UNIVERSAL MRI HUMBLE – DEFENDANT**

DATED: _____     BY: _____

Mohammad Athari, M.D.
On behalf of Universal MRI & Diagnostics, Inc. d/b/a
Universal MRI Humble

DATED: _____     BY: _____

Ali Fazel
Fazel Law
Counsel for Defendants

**UNIVERSAL MRI CONROE – DEFENDANT**

DATED: _____     BY: _____

Mohammad Athari, M.D.
On behalf of Universal MRI & Diagnostics, Inc. d/b/a
Universal MRI Conroe

DATED: _____     BY: _____

Ali Fazel
Fazel Law
Counsel for Defendants

**LISA PARKER AND MARIBETH HOLDERITH - RELATORS**

DATED: 02/07/2024     BY: _____

Lisa Parker

DATED: 2/7/2024     BY: _____

Maribeth Holderith

DATED: 02/07/2024     BY: _____

Collin Cobb
Attorney at Law
Counsel for Relators